UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                        )
IN RE:                                  )    CASE NO.         08-33681 (LMW)
                                        )
 JOHN F. CAVACIUTI,                     )    CHAPTER          7
                                        )
            DEBTOR.                     )    DOC. I.D. NOS.   13, 19, 25, 30, 51, 68
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

| | |
|---|---|
| C. Donald Neville, Esq. | Attorney for Movant D.A.N. Joint Venture, |
| Kroll, McNamara, Evans & | a Limited Partnership |
| Delehanty, LLP | |
| 65 Memorial Road, Ste. 300 | |
| West Hartford, CT 06107 | |
| | |
| Robert F. Cohen, Esq. | Attorney for Debtor |
| Law Offices of Robert F. Cohen | |
| 580 Broad Street, Ste. 101 | |
| Bristol, CT 06010 | |
| | |
| Bonnie C. Mangan, Esq. | Chapter 7 Trustee |
| Law Office of Bonnie C. Mangan | |
| 1050 Sullivan Avenue, Ste. A3 | |
| South Windsor, CT 06074 | |

**MEMORANDUM OF PARTIAL DECISION
AND ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Lorraine Murphy Weil, United States Bankruptcy Judge

The matters before the court are (a) D.A.N. Joint Venture, a Limited Partnership's ("D.A.N.") motion for summary judgment (Doc. I.D. No. 51, the "S/J Motion") and (b) the above-referenced debtor's (the "Debtor") objection (Doc. I.D. No. 68, the "S/J Objection") thereto.[1] The

---

[1] References to the docket of this chapter 7 case appear in the following form: "Doc. I.D. No. ___."

S/J Motion refers to the following other contested matters: (1) D.A.N.'s motion for relief from stay (Doc. I.D. No. 13, the "R/S Motion") with respect to a certain property (the "Property") known as 48 Shagbrook Road, Waterbury, Connecticut[2] and (2) the Debtor's motion to avoid pursuant to 11 U.S.C. § 522(f) (Doc. I.D. No. 25, the "Section 522(f) Motion") with respect to a certain judgment lien (the "Lien") held by D.A.N. with respect to the Property. This court has jurisdiction over these contested matters (the "Contested Matters") as core proceedings pursuant to 28 U.S.C. §§ 157 and 1334(b) and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[3]

I.   **PROCEDURAL BACKGROUND**

This case was commenced by the Debtor's filing of a chapter 7 petition (the "Petition") on November 10, 2008 (the "Petition Date"). On the Petition, the Debtor listed a street address (the "Street Address") that was not the Property. (*See* Doc. I.D. No. 1.) The Debtor filed a full set of schedules with the Petition. Schedule A (Real Property) lists a "Fee Simple" interest in the Property with a stated value of $150,000.00. (*See* Doc. I.D. No. 1 (Schedule A).) Schedule D (Creditors Holding Secured Claims) lists a lien on the Street Address property in the stated amount of $60,000.00.[4] (*See id.* (Schedule D).) Schedule D also lists a mortgage (the "Countrywide Mortgage") on the Property in favor of Countrywide Home Loans in the stated amount of $179,000.00. (*See id.* (Schedule D).)[5] Original Schedule C did not claim an exemption with respect

---

[2] The Property also is known as Lot 52 Shagbark Road. (*See* Doc. I.D. No. 57 (attached stipulation).)

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[4] The Street Address property is not listed on Schedule A.

[5] The Schedules reflect that a certain James Cacatiuti is codebtor with respect to the Countrywide Mortgage. (*See id.* (Schedules D and H).)

to the Property. (*See id* (Schedule C - Property Claimed as Exempt).) Although the Lien is not listed on Schedule D, it is reflected in an entry on Schedule F (Creditors Holding Unsecured Nonpriority Claims). (*See id.* (Schedule F) ("Judgement [sic] Lien" in the amount of $96,775.00 held by D.A.N.).)

On January 27, 2009, the Debtor filed an Amended Schedule C (Property Claimed as Exempt), claiming an exemption in the Property as a federal "homestead" pursuant to 11 U.S.C. §§ 522(b) and 522(d)(1). (*See* Doc. I.D. No. 37, the "Claimed Exemption.") On July 21, 2009, the court issued an order granting the current holder of the Countrywide Mortgage (BAC Home Loans Servicing, L.P.) relief from stay. (*See* Doc. I.D. Nos. 87 (motion), 94 (order).)[6]

## II.    THE CONTESTED MATTERS

D.A.N. filed the R/S Motion on November 19, 2008. The Debtor filed an objection (Doc. I.D. No. 19, the "R/S Objection") to the R/S Motion on November 26, 2008. The R/S Objection asserted as its sole defense the avoidability of the Lien. (*See id.*)[7] The Debtor filed the Section 522(f) Motion on January 9, 2009. D.A.N. filed an objection (Doc. I.D. No. 30, the "Section 522(f) Objection") to the Section 522(f) Motion on January 20, 2009.[8]

The Section 522(f) Objection states in relevant part as follows:

> 9.    The Motion to Avoid Lien should be denied for one or more of the following reasons:

---

[6] It appears to be the intent of the Debtor to avoid the Lien and then to attempt to negotiate a loan modification or the like with respect to the Countrywide Mortgage.

[7] The foregoing constitutes "extraneous grounds" as a defense to the R/S Motion. *See In re Fitzgerald*, 237 B.R. 252, 259-60 (Bankr. D. Conn. 1999).

[8] D.A.N. also filed an objection to the Claimed Exemption on the same day. (*See* Doc. I.D. No. 29.)

    (a)    The Property is not the Debtor's primary residence;

    (b)    The Property was not the Debtor's primary residence when the Judgment Lien was filed;

    (c)    Based upon the Debtor's estimated value of the Property and the amount owed to consensual secured creditors on the Property, the Debtor does not have any exemption and, therefore, the Judgment Lien does not impair the exemption;

    (d)    The interest that the Debtor had in the Property when the Judgment Lien fixed on the Property is not the same interest that the Debtor had when he filed for bankruptcy;

    (e)    The Debtor took title to the Property from Harold Wilcox subject to the Judgment Lien; and/or

    (f)    The Judgment Lien was filed on the Property before or simultaneously with the Debtor taking title.

(Doc. I.D. No. 30 at 2-3.)

D.A.N. filed the S/J Motion with respect to both the Section 522(f) Motion and the R/S Motion (together with a supporting memorandum of law (Doc. I.D. No. 57)) on February 13, 2009. The Debtor filed the S/J Objection on March 13, 2009. In the S/J Motion, D.A.N. asserts that the interest of the Debtor in the Property must be deemed to have been acquired by the Debtor after attachment of the Lien, thus placing the Lien beyond the purview of Bankruptcy Code § 522(f) pursuant to *Farrey v. Sanderfoot,* 500 U.S. 291 (1991), for the reasons that follow:

- With respect to the Wilcox Interest (as hereafter defined), the Lien attached to that interest at the same instant that Harold Wilcox conveyed the Wilcox Interest to the Debtor.

- With respect to the Debtor's Interest (as hereafter defined), the conveyance of the Wilcox Interest to the Debtor changed the Debtor's Interest to such an

extent that the fee interest in the Property which the Debtor held as of the Petition Date must be deemed to have been acquired subject to the Lien.

(*See* Doc. I.D. No. 57.) The S/J Objection contests both those points. At the request of the court, the parties each filed a supplemental memorandum of law. (*See* Doc. I.D. Nos. 80 (filed by D.A.N.) and 82 (filed by the Debtor).)

### III.  STIPULATED FACTS

On or about February 11, 1991, the Connecticut Bank and Trust Co. obtained a judgment against the Debtor for $34,683.91 in damages, $284.50 in court costs and $3,000.00 in attorneys' fees, for a total judgment of $37,968.41 (the "Judgment"). Fleet Bank, N.A. is the successor in interest to Connecticut Bank and Trust Co. On October 28, 1994, Fleet Bank, N.A. assigned all right, title and interest in the Judgment to D.A.N., which was the owner and holder thereof at relevant times. On or about June 4, 2007, D.A.N. filed a Judgment Lien, duly signed and sworn to, with the City Clerk of the City of Waterbury, claiming a lien on the Property for the sum of $37,968.41 (plus interest), which lien is recorded in the Waterbury Land Records in Volume 6140 at Page 275 (the "Original Judgment Lien"). On or about July 9, 2007, the Original Judgment Lien was amended to correct a scrivener's error. D.A.N. filed the amended judgment lien, duly signed and sworn to, with the City Clerk of the City of Waterbury, Connecticut claiming a lien on the Property for $37,968.41, which lien is recorded in the Waterbury Land Records in Volume 6171 at Page 202. (The Original Judgment Lien, as amended as set forth above, is defined above as the "Lien.")

When the Lien was filed, the Property was owned by the Debtor and Harold Wilcox, as tenants-in-common. On or about August 10, 2007, Harold Wilcox transferred all of his interest (the

"Wilcox Interest")[9] in the Property to the Debtor via a quit claim deed. On or about June 30, 2008, D.A.N. filed an action to foreclose the Lien in Connecticut Superior Court which action was entitled *D.A.N. Joint Venture, a Limited Partnership v. John F. Cavaciuti, et al.* D.A.N. is a creditor of the Debtor due to the Judgment. D.A.N. is a secured creditor as to the Property for amounts due and owing under the Judgment by virtue of the Lien. On or about December 18, 2007, D.A.N. filed a Proof of Claim for $104,319.96 for amounts due and owing under the Judgment and secured by the Lien. The Proof of Claim is timely and valid. D.A.N. has a valid claim against the Debtor for not less than $104,319.96. (The Debtor reserves the right to contest the amount of the secured claim.) The Debtor claims a "homestead exemption" under 11 U.S.C. §§ 522(b)(2) and 522(d)(1) in the Property in the amount of $16,575.00. There is a consensual mortgage on the Property to Countrywide Home Loans (*i.e.,* the Countrywide Mortgage).[10] The total amount due and owing on the Countrywide Mortgage exceeds the fair market value of the Property. D.A.N. claims that the Lien is superior to the Countrywide Mortgage and reserves its right to contest priority between the Lien and the Countrywide Mortgage. (*See* Doc. I.D. No. 57 (attached stipulation).)

## IV.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999). *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P.

---

[9]  The Debtor's co-tenant's interest is hereafter defined as the "Debtor's Interest." The Lien as recorded claimed a lien against the Property and not just against the Debtor's Interest.

[10]  The Countrywide Mortgage was granted by the Debtor after his acquisition of the Wilcox Interest and burdens the entire fee interest.

9014). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (Krechevsky, J.). Ultimately, the role of the court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**V.    11 U.S.C. § 522(f)**

Bankruptcy Code § 522(f) provides in relevant part as follows:

> (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>
> (A) a judicial lien . . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of–
>
> (i)   the lien;
>
> (ii)  all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens . . . .

11 U.S.C.A. § 522(f) (West 2009). "Impair[ment]" of an exemption within the purview of Section 522(f)(1) is determined by resort to the statutory formula set forth in Section 522(f)(2). *See, e.g.,*

*Trahan v. Day Kimball Hospital (In re Trahan)*, 337 B.R. 448 (Bankr. D. Conn. 2006) (Krechevsky, J.).

"Section 522(f) allows a debtor to 'avoid the fixing of a lien on an interest of the debtor in property.' In *Farrey* [*v. Sanderfoot*], the Supreme Court construed this phrase to mean that the debtor must have 'possessed the interest to which the lien fixed, before it fixed.'" *Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 684 (1st Cir.), *cert. denied*, 527 U.S. 1036 (1999) (citation omitted). Issues of whether or when a lien "fixes" to a property interest are decided in accordance with applicable non-bankruptcy (here Connecticut) law. *See Farrey,* 500 U.S. at 299 ("Whether Sanderfoot ever possessed an interest to which the lien fixed, before it fixed, is a question of state law."). For Section 522(f) to apply, the debtor also must possess the relevant interest in the property as of the commencement of the bankruptcy case. *See Weinstein,* 164 F.3d at 680. The debtor bears the burden of proof by a preponderance of the evidence on every element of Section 522(f). *See, e.g., In re Fox,* 353 B.R. 388, 393 (Bankr. D. Conn. 2006).[11]

## VI.    CONNECTICUT JUDGMENT LIEN LAW

### A.    Background

This matter presents (with respect to the Wilcox Interest) a novel question under Section 52-380a of the Connecticut General Statutes: whether a judgment lien valid under the statute can burden a further interest in the *same* property (an "After-Acquired Property Interest") acquired by the judgment debtor after lien recordation. For the reasons discussed below the court answers that

---

[11]    Outside of Section 522(f) proceedings, the party objecting to a Section 522 exemption bears the burden of proof on the issue. *See* Fed. R. Bankr. P. 4003(c).

question in the affirmative and finds and concludes that the Lien burdens the Debtor's entire fee interest in the Property.

In Connecticut, judgment liens are creatures of Section 52-380a which provides in relevant part as follows:

> (a) A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, containing: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the money judgment and the amount due thereon; and (2) a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property.
>
> (b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described [the "Timing Provision"] . . . .
>
> (c) A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property . . . . No action to foreclose a judgment lien filed pursuant to this section may be commenced unless an execution may issue pursuant to section 52-356a [the "New Execution Test"]. . . .

Conn. Gen. Stat. Ann. § 52-380a (West 2009).[12]

The majority rule is that a judgment lien *does* attach to After-Acquired Property Interests. *See, e.g., Marine Midland Bank v. Scarpino (In re Scarpino),* 113 F.3d 338 (2d Cir. 1997) (applying New York law). However, in most of those jurisdictions the judgment is a general lien on *all* the debtor's real property (either within a specific county or the whole state). *See, e.g., id.* at 341 ("Since at least 1813, New York has provided by a statute for a lien that automatically attaches to a judgment debtor's real property if the judgment is docketed in the county in which the property

---

[12] The statute was no different in 2007.

is located."). On the other hand, in Connecticut a judgment lien is enforceable only if recorded with respect to *specific* property. *See* Conn. Gen. Stat. 52-380a. *See also Ives v. Beecher,* 54 A. 207, 208 (Conn. 1903) ("[The judgment lien process], like that of the process by [execution] levy, was to create a *specific* lien upon *specific* property . . . .") (emphasis added). Accordingly, authority from other jurisdictions generally is not useful here on the After-Acquired Property Interest issue.

Analysis of relevant Connecticut law should begin with an analysis of the development of judgment lien procedure in Connecticut. Prior to 1878, the only method to enforce a judgment against real property was by a writ of execution. *See Ives,* 54 A. at 207-08. From 1878 to 1983 there were two procedures for a judgment creditor to reach the real property of its judgment debtor : execution process and judgment lien process.

> In 1878 the [Connecticut] Legislature sought to provide another-more simple and beneficial-process for the enforcement of the general right created by a judgment [*i.e.,* judgment lien procedure]. Hence the legislation which now appears in Gen. St. 1902, § 4149 *et seq* . . . . It is clear, from the purpose and provision of this act of 1878, that it was intended not only to furnish a new process, but, so far as interests in real estate were concerned, one which was to be coextensive in its application with existing [execution] process . . . . The Legislature was evidently looking for a process which should be at once as effective as the old, and at the same time simple, inexpensive, usable by persons not astute in the law, and not likely to be defeated in its end through technicalities or exacting requirements.

*Ives, supra* at 208.

From at least 1902 (and probably 1888) until 1983, Connecticut judgment lien law contained a provision substantially as follows:

> No judgment lien shall be valid as to any real estate, or any interest therein, which might not have been levied upon under an execution on the same judgment, at the date of filing the lien [the "Old Execution Test"].

Conn. Gen. Stat. Ann. § 49-45, *repealed by* P.A. No. 83-581, § 39 (1983) (P.A. No. 83-581, hereafter is referred to as the "1983 Revision").

The 1983 Revision accomplished two relevant changes to the Connecticut law of post-judgment remedies. First, it repealed the Old Execution Test and enacted instead the New Execution Test. *See* P.A. No. 83-581, §§ 9 (enacting Section 52-356a); 39 (repealing Section 49-45). Second, the 1983 Revision eliminated execution procedure with respect to real property. *See* P.A. 83-581 § 39 (repealing former Section 52-371). *Cf.* Conn. Gen. Stat. § 52-371 (repealed 1983) ("Levy on real estate"); Conn. Gen. Stat. § 52-356a (effective July 14, 1983; subsequently amended) (execution procedure for personal property only).[13]

### B.    Statutory Construction

In order to resolve the relevant portion of the instant dispute, the court must construe the Timing Provision "in light of well established principles that require [the court] . . . to ascertain and give effect to the apparent intent of the legislature." *Caltabiano v. Planning and Zoning Comm'n,* 211 Conn. 662, 666 (1989) (citations and internal quotation marks omitted). *See also Office of Consumer Counsel v. Dep't of Public Utility Control,* 246 Conn. 18, 29 (1998). That intent is determined initially by reference to the words of the statute. *Lunn v. Cummings & Lockwood,* 56 Conn. App. 363, 371-72 (2000). When the language of the statute is clear and unmistakable, construction is prohibited and legislative intent is conclusively established by the statute's plain meaning. *Caltabiano,* 211 Conn. at 666. *See also State ex rel. Rourke v. Barbieri,* 139 Conn. 203 (1952). However, when the statute is ambiguous because its plain language is susceptible of two reasonable constructions, a court may ascertain legislative intent from legislative proceedings/history and the statute's intended purpose. *See Caltabiano,* 211 Conn. at 666; *American*

---

[13]    The 1983 Revision also created an additional (to execution process) post-judgment remedy against personal property: creation of a judgment lien on personal property. (*See* P.A. No. 83-581 § 8. *See also* Conn. Gen. Stat. § 52-355a ("Judgment lien on personal property").)

*Universal Ins. Co. v. DelGreco,* 205 Conn. 178, 193 (1987). When the record of legislative proceedings is unhelpful, a court may ascertain presumed legislative intent by use of well-established rules of statutory construction. *See Colon v. City of New Haven*, 60 Conn. App. 178, 183 (2000) ("Because the legislative history is not availing, we must apply the tools of statutory construction.").

For present purposes (and because it makes no difference to the result here) the court will presume that the Timing Provision is ambiguous with respect to the After-Acquired Property Interest issue. The relevant legislative history of the 1983 Revision is of limited help. Accordingly, the court resorts to established rules of statutory construction.

As noted above, for present purposes the most significant change which the 1983 Revision effected was the repeal of the Old Execution Test and the enactment of the New Execution Test. The Old Execution Test was applied as of lien *recordation* and referred specifically to "any interest [in the real estate]," Conn. Gen. Stat. § 49-45 (repealed 1983). The Old Execution Test was intended to make judgment lien procedure more nearly identical to execution procedure. *See Ives,* 54 A. at 208. Were the Old Execution Test in effect today, the Debtor would prevail here on the After-Acquired Property Interest issue.

However, the New Execution Test is applied at lien *foreclosure* and has no reference to any *specific* interest in real property. *See* Conn. Gen. Stat. § 52-380a(c). Moreover, the original purpose of the Old Execution Test (to make lien procedure nearly identical to execution procedure) is not relevant under the 1983 Revision because (as noted above) there is no execution procedure for real estate under the 1983 Revision. It is a well-established rule of statutory construction that

> when a legislature amends a statute by omitting words, it is to be presumed that the legislature intended the statute to have a different meaning than that accorded it

> before the amendment. Even an earlier statute on the same subject which has expired or been repealed may be considered in construing an act of doubtful meaning.

73 Am. Jur. 2d *Statutes* § 106 (2009) (footnotes omitted). *See also Pierce v. Albanese,* 144 Conn. 241, 247 (1957) (Courts must presume that when the Legislature chose language "drastically different" from that used previously, it intended to effect a change in the law.). Given the foregoing and the lack of contrary evidence of legislative intent, this court must presume that, in enacting the 1983 Revision, the Legislature intended to change the previously existing rule with respect to After-Acquired Property Interests.[14] Moreover, the alternative rule would require the judgment lien creditor to re-record the lien after the conveyance of the After-Acquired Property Interest to the judgment debtor. That requirement would not be consistent with the intent behind the 1983 Revision to simplify the law of post-judgment remedies. *See* An Act Concerning Post-Judgment Remedies: Hearing on P.A. No. 83-581 Before the Judiciary Committee, 1983 Sess., pp. 1075-76 (Mar. 22, 1983) (statement of Philip Dunn, Chairman, Subcommittee of Law Revision Commission) ("Th[e] task was assigned to the Commission in 1981 . . . and at that time, the intent was to clean up a hodge podge of legislation that regulated and controlled the enforcement of judgements [sic] . . . . I think what we have tried to do is to put into one cohesive act the post-judgement [sic] remedy procedures."). Accordingly, the court finds and concludes that, under applicable (Connecticut) law,

---

[14] The foregoing does not alter the rule that "in an action to foreclose a judgment lien, a plaintiff cannot take . . . interests in the land that is [sic] owned by others [not liable on the judgment debt] than the judgment debtor, unless the debt which it is sought to satisfy was contracted upon the faith or credit of the debtors [sic] sole and absolute ownership of the property." *Young v. Armetta,* No. CV 96-0079270 S, 1999 WL 370567, at *2 (Conn. Super. May 20, 1999). D.A.N. has alleged (as an alternative theory) that the Debtor had an interest with respect to the Wilcox Interest to which the Lien attached at recordation. It is not necessary for the court to reach that issue.

the Lien attached to the Wilcox Interest no later than the conveyance of the Wilcox Interest to the Debtor.

At various times during these proceedings, the Debtor (and the court) have expressed concern over the interrelationship between the issue at bar and the policy behind the Connecticut recording statute. The short answer is that the Connecticut recording statute is irrelevant here. That is because the policy behind the Connecticut recording statute is inapplicable to the validity of a judgment lien as against the judgment debtor (although the recording requirement of Section 52-380a is applicable). *See* Conn. Gen. Stat. § 47-10 (recording statute). However, the policy of the recording statute does apply to the issue of the priority of the judgment lien with respect to other liens and encumbrances. *See id.* Moreover, whether the recording of the Lien was legally sufficient notice of the Lien with respect to subsequent lienors and encumbrancers is irrelevant and beyond the scope of this opinion. *Cf. Connecticut Nat'l Bank v. Lorenzato,* 221 Conn. 77, 81 (1992) ("We have consistently held that the recordation of a valid mortgage gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction so that third party claimant, exercising common prudence and ordinary diligence, can ascertain the extent of the encumbrance.").

### VII.    FARREY V. SANDERFOOT ISSUES

#### A.    Wilcox Interest

As noted above, under *Farrey v. Sanderfoot* a judgment lien is avoidable under Section 522(f) only if the debtor "possessed the interest to which the lien fixed, *before* it fixed." *Farrey,* 500 U.S. at 299 (emphasis added). As also discussed above, the Lien fixed on the Wilcox Interest no later than simultaneously with the conveyance of the same to the Debtor. Accordingly, the Lien on

the Wilcox Interest is not subject to avoidance pursuant to Section 522(f). *Cf. Scarpino,* 113 F.3d at 342 ("[W]e conclude that Marine Midland's judgment lien attached to . . . [the] property simultaneously with his acquisition of the property. Accordingly, the lien is not avoidable pursuant to § 522(f)."). *Cf. also Farrey, supra* ("[I]t is settled that a debtor cannot use § 522(f) to avoid a lien on an interest acquired after the lien attached.").

### B.    Debtor's Interest

The parties are in agreement that, upon the conveyance of the Wilcox Interest to the Debtor, the Wilcox Interest and the Debtor's Interest "merged."[15] D.A.N. argues that the resulting fee interest in the Property which the Debtor held as of the Petition Date is sufficiently different from the Debtor's Interest that the Debtor must be deemed to have taken such interest subject to the Lien thus rendering the Lien unavoidable under Section 522(f). As this court noted in *Cadle Co. v. Banner (In re Banner),* 394 B.R. 292, 306-07 (Bankr. D. Conn. 2008), there are situations where arguments similar to D.A.N.'s would prevail. However, as *Banner* also indicated, the question is fact sensitive. *See id.* Accordingly, the court declines to grant summary judgment on this issue. Rather, the court defers judgment until after a trial at which the Debtor will have had the opportunity

---

[15] The court and the parties all have used the term "merged" to describe the legal effect of the conveyance of the Wilcox Interest to the Debtor. However, at least in Connecticut, "merge[r]" technically is not the correct term to describe what occurred here. That is because, in Connecticut, "[w]henever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less is immediately annihilated; or, in the law phrase, it is said to be 'merged' – that is, sunk or drowned – in the greater." *Shelton v. Hadlock,* 25 A. 483, 486 (Conn. 1892) (citation and internal quotation marks omitted). However, here there was no "greater" or lesser" interest between the Wilcox Interest and the Debtor's Interest. Whatever the proper term, the result is materially the same: "Since the tenancy in common is terminated by destruction of the unity of possession, the tenancy is dissolved by uniting all the titles and interests in one tenant, by purchase or otherwise." 86 C.J.S. *Tenancy in Common* § 15 (2009) (footnotes omitted).

-15-

to develop a record concerning all the facts and circumstances surrounding the conveyance by Mr. Wilcox.

**VIII.  CONCLUSION**

For the reasons discussed above: (a) the S/J Motion is granted and the S/J Objection is denied with respect to the Wilcox Interest and the Lien may not be avoided pursuant to Bankruptcy Code § 522(f) with respect to such interest;[16] and (b) the S/J Motion is denied and the S/J Objection is sustained with respect to the Debtor's Interest in favor of a trial on the merits (at which all outstanding issues will be resolved).  By separate order, the court will schedule a status conference to discuss "next steps."  It is **SO ORDERED**.

Dated: October 27, 2009                                    BY THE COURT

                                                           Lorraine Murphy Weil
                                                           United States Bankruptcy Judge

---

[16]  As a result, moreover, there is no "extraneous grounds" defense to the R/S Motion with respect to the Wilcox Interest.